

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                              SUPERIOR COURT
                                              BUSINESS LITIGATION SESSION

| | |
|---|---|
| JENZABAR, INC.<br><br>Plaintiff,<br><br>v.<br><br>CASE WESTERN RESERVE UNIVERSITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. NO. 18-02654 C

### COMPLAINT

### INTRODUCTION

1.      Plaintiff, Jenzabar, Inc. ("Jenzabar"), brings this action for declaratory judgment, damages, and other relief against Defendant, Case Western Reserve University ("Case Western").

2.      Case Western contracted with Jenzabar in 2015 to obtain its Higher Reach software-as-a-service solution and to be Jenzabar's "design collaboration partner" on the development of future releases of Higher Reach containing additional functionality. Pursuant to this agreement, Jenzabar would provide Case Western with access to the Higher Reach software and Case Western would participate in Jenzabar's development of future releases of Higher Reach and obtain early access to product developments. The development of the future releases could have resulted in additional functionality that Case Western desired, but Higher Reach did not contain at the time of contracting in 2015.



3.      Case Western, based on an unsupported and unsupportable construction of the parties' contract, now asserts that Jenzabar failed to deliver promised functionality and that the Higher Reach software-as-a-service system cannot be implemented. Case Western refuses to pay Jenzabar more than $82,000 for software and services already delivered and has effectively repudiated the contract.

4.      Jenzabar has materially performed its obligations under the parties' agreement. Jenzabar thus seeks a declaration of the parties' rights and obligations under the contract and all damages arising from Case Western's breach and repudiation of the contract, including Case Western's non-payment of approximately $82,000 in fees and recovery of future amounts owed to Jenzabar by Case Western.

## PARTIES

5.      Jenzabar is a corporation incorporated in Delaware with a principal place of business at 101 Huntington Avenue, Suite 2200, Boston, Massachusetts, 02199.

6.      Case Western is a non-profit corporation organized under the laws of Ohio with a campus location at 10900 Euclid Avenue, Cleveland, Ohio, 44106.

## JURISDICTION AND VENUE

7.      Subject matter jurisdiction is appropriate pursuant to G.L. c. 231A, §§1 and 2. Pursuant to G.L. c. 231A, §1, the court has the authority to make "binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen[.]" Pursuant to G.L. c. 231A, §2, the court may determine the "right, duty, status or other legal relations" under "written contracts or other writings constituting a contract or contracts" including "any question of construction or validity thereof which may be involved in such determination."

2

8.    Jurisdiction also is appropriate in this Court under G.L. c. 223A, § 3, because

Jenzabar maintains its principal place of business in the Commonwealth and transacts business in

the Commonwealth, and because the parties transacted business in this Commonwealth.

9.    Venue is appropriate in this Court under G.L. c. 223, § 8(3), because when both

parties are corporations, venue is appropriate "in any county in which either corporation has a

usual place of business."

## FACTUAL ALLEGATIONS

10.    In or about June 2014, Case Western issued a request for proposal (the "RFP") to

software service providers because it wanted to implement a new software program to help

administer executive education at its Weatherhead School of Management.

11.    Case Western forwarded this RFP to Jenzabar, among other software service

providers.

12.    On July 11, 2014, Jenzabar responded to the RFP and proposed its Higher Reach

software-as-a-service solution.

13.    Higher Reach is a web-based software program hosted by Jenzabar specifically

designed for use in continuing education, workforce development, and executive education

settings.

14.    Higher Reach helps educational institutions administer their continuing education

programs by providing functionality such as automated course and faculty scheduling, online

registration and transaction processing, administration of certificate and program management,

and advanced reporting.

15.    Over the next approximately eleven months, Case Western and Jenzabar had

several discussions concerning the Higher Reach solution. During those discussions, Case

3

Western expressed a desire for certain types of additional functionality in the Higher Reach software that had not been developed by Jenzabar at that time. The parties' came to refer to this additional functionality as the "Accelerated Functions."

16.    The Accelerated Functions included: (i) full event registration management, including the capability to submit registrations, cancel registrations, transfer registrations to another program, and substitute an employee for another employee; (ii) capability to view utilization of registrations within the Higher Reach system; (iii) capability to view registration history of employees within the Higher Reach system; (iv) capability to view attendance history of employees within the Higher Reach system; (v) capability to pay outstanding bills within the Higher Reach system; (vi) capability to change email preferences within the Higher Reach system; (vii) capability to add new employees within the Higher Reach system; and (viii) capability to update employee contact information within the Higher Reach system.

17.    During these discussions, Jenzabar presented several demonstrations of the Higher Reach software to Case Western showing exactly what the software did (and did not) do. Jenzabar made clear that while the Accelerated Functions were technically feasible—and were functions that Jenzabar's development plans contemplated—it had not developed those specific functions that Case Western desired.

18.    Further, Jenzabar made it clear that while it was working toward developing the functionality desired by Case Western, Jenzabar would not customize its Higher Reach product to satisfy just one customer's needs. Rather, it cautioned Case Western that it would make product development decisions based on providing functionality with broad applicability that appealed to its overall customer base. In short, Jenzabar would not act as Case Western's development shop.

4

19.    Accordingly, Jenzabar expressly informed Case Western that Jenzabar could not promise to provide any particular functionality to Case Western in the future and that Jenzabar might have to delay, change, or abandon any Accelerated Functions based on the evolution of its product roadmap (i.e., Jenzabar's high-level strategic vision and the corresponding plan to develop specific features for the Higher Reach solution).

20.    Despite these limitations, and with express knowledge of them, Case Western still entered into an agreement with Jenzabar to use the Higher Reach software-as-a-service solution.

21.    Jenzabar and Case Western also negotiated an agreement whereby Case Western would work collaboratively with Jenzabar to help design and develop the Accelerated Functions by providing feedback, recommendations, and input on the product to potentially be incorporated into future releases of Higher Reach.

22.    Pursuant to its contractual agreement with Jenzabar, Case Western agreed to purchase and use the Higher Reach solution "as-is." Case Western would also have input into Jenzabar's further design and development of the Accelerated Functions. Case Western also would receive additional complementary access to Jenzabar conferences and trainings and would be entitled to early access to releases of Higher Reach that contain any Accelerated Functions.

23.    On June 30, 2015, the parties entered into several agreements to effectuate this arrangement, including a Master Agreement with the following addendums: Jenzabar as a Service (Addendum A); Professional Services (Addendum B); Jenzabar Recruitment Manager Service (Addendum C); and Modification of Standard Terms (Addendum D). The parties also entered into a Design Collaboration Partnership Program Addendum (the "DCPP Addendum" or "DCPPA"), Order for Jenzabar as a Service ("Order") and a Professional Services Statement of

Work ("SOW"). A copy of these agreements, which were incorporated into and integrated with the Master Agreement, is attached as Exhibit 1.

24.    Section 5 of the Master Agreement, as amended by Addendum D, provides: "In no event shall Jenzabar's liability to client, if any, exceed the fees paid to Jenzabar for the particular software or service which is the subject of the claim." Section 5 also expressly excludes liability for any consequential, indirect, incidental, special, or punitive damages.

25.    Section 8 (Warranty Disclaimer) of Addendum A to the contract provides:

THE JAAS [Jenzabar's software-as-a-service] AND THE JSR [Jenzabar's related services] ARE PROVIDED AS-IS. JENZABAR MAKES NO REPRESENTATIONS REGARDING THE JAAS AND THE LEVEL OF SERVICE TO BE PROVIDED, AND JENZABAR DISCLAIMS ALL WARRANTIES WITH RESPECT TO JAAS AND THE JSR SERVICES, WHETHER EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

26.    Section 1 of the DCPPA provides:

Jenzabar has invited [Case Western] to participate in a design collaboration partnership program where it identifies clients who are interested in learning more about Jenzabar's products and services and would like to provide feedback and recommendations relating to such products and offer input into Jenzabar products and services and have the opportunity to obtain early access to Jenzabar products and/or service on a confidential basis[.]"

27.    Section 2.3.1 of the DCPPA provides that Case Western will identify for Jenzabar its desired functional requirements for Higher Reach for:

(i) full event registration management, including the capability to submit registrations, cancel registrations, transfer registrations to another program, and substitute an employee for another employee, (ii) capability to view utilization of registrations within the Higher Reach System, (iii) capability to view registration history of employees within the Higher Reach System, (iv) capability to view attendance history of employees within the Higher Reach System, (v) capability to pay outstanding bills within the Higher Reach System, (vi) capability to change email preferences within the Higher Reach System, (vii) capability to add new employees within the Higher Reach System, and (viii) capability to update employee contact information within the Higher Reach System (the "*Accelerated Functions*")[.]

6

28.    Section 4 of the DCPPA disclaims warranties. It provides:

IN THE EVENT THAT JENZABAR GIVES CLIENT ACCESS TO A
VERSION OF THE ACCELERATED FUNCTIONS OR PORTIONS THEREOF
PRIOR TO SUCH VERSION'S GENERAL AVAILABILITY RELEASE,
CLIENT UNDERSTANDS AND AGREES THAT SUCH VERSION OF THE
ACCELERATED FUNCTIONS IS, PRIOR TO ITS GENERAL
AVAILABILITY RELEASE, "AS-IS" WITHOUT ANY WARRANTIES OF
ANY KIND. CLIENT UNDERSTANDS AND ACKNOWLEDGES THAT ANY
PRE-RELEASE VERSION OF THE ACCELERATED FUNCTIONS MAY,
LIKE ANY OTHER PRE-RELEASE VERSION, PRODUCE INACCURATE
RESULTS OR CORRUPT DATA. CLIENT WILL NOT USE A PRE-RELEASE
VERSION OF THE ACCELERATED FUNCTIONS AS ITS SYSTEM OF
RECORD. JENZABAR WILL INFORM CLIENT WHEN A VERSION OF THE
ACCELERATED FUNCTIONS IS AVAILABLE FOR PRE-GENERAL
AVAILABILITY RELEASE USE AND WHEN THE VERSION IS
CONSIDERED A GENERAL AVAILABILITY RELEASE. ONCE A VERSION
OF THE ACCELERATED FUNCTIONS OR A PORTION THEREOF IS
IDENTIFIED AS GENERALLY AVAILABLE, USE OF THAT VERSION
AND/OR A PORTION THEREOF WILL BE GOVERNED BY CLIENT'S
ORDER FOR THE HIGHER REACH SYSTEM. NOTHING HEREIN
REPRESENTS AN OBLIGATION ON THE PART OF JENZABAR TO
PUBLICALLY RELEASE ANY VERSION OF THE ACCELERATED
FUNCTIONS NOT YET PUBLICALLY RELEASED.

29.    The DCPPA in Section 7 (Limitation of Liability) further provides that Jenzabar's

aggregate liability under the DCPPA shall not exceed $6,000.

30.    In the DCPPA (Section 8.1), Case Western expressly acknowledges and the

parties agree that "Jenzabar retains the sole authority to determine what features and

functionality will be in the Higher Reach System."

31.    Jenzabar waived the DCPP participation fee for Case Western.

32.    The Order provides:

Although Jenzabar makes no representation and does not warrant that the
Accelerated Functions will be generally available by a certain date, Jenzabar shall
grant to Client (i) a non-cash first credit in the amount of $13,476 if none of the
Accelerated Functions are generally available by December 31, 2015 and (ii) a
non-cash second credit in the amount of $16,643 if all of the Accelerated
Functions are not generally available by February 1, 2016 (such credits,
*"Accelerated Functions Credit(s)"*). Such Accelerated Functions Credit(s) shall be
the sole and exclusive remedy for the failure to issue a general availability release

of the Accelerated Functions. The Accelerated Functions Credit(s) can only be used to offset any future fees that Client owes to Jenzabar for the Jenzabar as a Service purchased pursuant to this Order, and the Accelerated Functions Credits expire if not used within twenty four (24) months from the date they are granted by Jenzabar. Jenzabar's grant of the Accelerated Functions Credit(s) is contingent on Client's performance of the Client responsibilities as provided in Sections 2 and 6 of the DCPPA Addendum, including, without limitation, Client's sign off of functional requirements by July 31, 2015.

33.    The Order also sets forth the purchase price and payment terms for Case Western for Higher Reach, including that Case Western will pay Jenzabar in annual installments of $66,572, with the first payment due 45 days from the effective date of the Order (and subsequent annual installments due 45 days from the anniversary of the effective date of the Order through 2019).

34.    Jenzabar and Case Western later entered into two additional agreements, called "Secondary Services Orders," on November 23, 2016, and May 9, 2017, pursuant to which Jenzabar would provide additional technical consulting services for data migration and conversion. Jenzabar would separately invoice Case Western for these services.

35.    After the agreements were executed, the parties' began the process of implementing Higher Reach for Case Western.

36.    This included Jenzabar providing consulting services towards the Higher Reach implementation as well as working on the development of the Accelerated Functions through the DCPP.

37.    The Accelerated Functions were being developed by Jenzabar in a separate module for Higher Reach called "Higher Reach Contract Training" or the "Contract Training Module."

38.     The Contract Training Module was not ready for release by February 2016 and Jenzabar issued a credit to Case Western in March 2016 pursuant to the Order. Case Western accepted the credit.

39.     Jenzabar and Case Western continued work toward implementation of Higher Reach and the Contract Training Module.

40.     Jenzabar delivered Higher Reach and a generally available version of the Contract Training Module in the fall of 2016 and continued work towards a go-live for Case Western over the next few months.

41.     This included a trip by Jenzabar personnel to Case Western in January 2017 for on-site training and implementation work.

42.     Case Western, in the wake of the January 2017 on-site, asserted that there were issues with the Contract Training Module and stated that it would not go-live with either Higher Reach or the Contract Training Module.

43.     Case Western and Jenzabar had discussions to prioritize what additional functionality Case Western wanted for the Contract Training Module in order to go-live.

44.     Jenzabar worked on the requests made by Case Western and delivered a new version of Higher Reach and the Contract Training Module that addressed Case Western's requests by spring 2017.

45.     At about this time, the project lead for Case Western on the Higher Reach implementation, Ryan Rucker, left Case Western and new leadership took over the project.

46.     Case Western's requirements to move forward with the solution then changed.

9

47.    The parties had additional discussion over the summer of 2017 about Case Western's requirements to go-live with Higher Reach and the Contract Training Module, and Case Western kept requesting additional functionality.

48.    Toward the end of the summer, Case Western and its new project leaders sent Jenzabar a review of what had been delivered compared to the functionality that Case Western had said it wanted in 2015.

49.    Case Western, disregarding nearly two years of discussions between the parties, effectively demanded that Jenzabar deliver all of the functionality that Case Western said it wanted back in 2015. This demand contradicted the plain language and intent of the parties' agreement.

50.    In October of 2017, Jenzabar personnel traveled to Ohio to meet with members of the Case Western team. The meeting lasted two days and the parties further discussed the functionality that Case Western wanted in the Contract Training Module. Jenzabar and Case Western worked together to develop a list of possible resolutions (i.e., additional functionality) that would satisfy Case Western's needs.

51.    Jenzabar then began an internal evaluation of what Case Western identified as its critical needs for the Contract Training Module that were identified at the October meeting.

52.    When Jenzabar approached Case Western to discuss a path forward in March 2018, Case Western refused to speak with Jenzabar.

53.    Case Western, in April of 2018, demanded mediation pursuant to Section 6 of the Master Agreement and Addendum D.

54.    Jenzabar and Case Western participated in non-binding mediation on August 14, but did not resolve their disputes.

55.     Case Western has refused to pay a number of invoices issued by Jenzabar for services provided under the agreements. A copy of Jenzabar's account record for Case Western is attached as Exhibit 2.

## COUNT I
### (Declaratory Judgment)

56.     Jenzabar hereby incorporates by reference the allegations in paragraphs 1 through 55.

57.     An actual controversy exists between Jenzabar and Case Western concerning the proper interpretation of the parties' contract.

58.     Specifically, the parties dispute whether Jenzabar had an obligation to deliver to Case Western the Accelerated Functions described in the DCPPA and whether the Accelerated Functions Credits provided by Jenzabar and accepted by Case Western alleviates Jenzabar from an obligation to deliver the Accelerated Functions to Case Western.

59.     The parties also dispute whether Jenzabar is liable to Case Western under the agreements for Case Western's consequential, indirect, incidental, or special damages, and also whether Jenzabar's liability under the contract is limited to the amounts paid by Case Western to Jenzabar as fees for the particular service provided.

60.     The controversy has caused, and will continue to cause, harm to Jenzabar.

61.     Pursuant to G.L. c. 231A, §§ 1 and 2, this is an appropriate case for this Court to issue a binding declaration regarding the status and rights of parties under the agreements.

62.     Jenzabar therefore seeks a declaration from this Court that (i) it does not have an obligation under the agreements to deliver the Accelerated Functions to Case Western, the Accelerated Functions Credits are Case Western's sole and exclusive remedy, and Jenzabar's payment of the Accelerated Functions Credits to Case Western satisfies any obligation it has

11

related to the Accelerated Functions, (ii) any liability of Jenzabar under the DCPPA is limited to $6,000, and (iii) any liability of Jenzabar under the contract is limited to amount of fees paid by Case Western to Jenzabar for the particular service provided.

## COUNT II
### (Breach of Contract)

63.     Jenzabar hereby incorporates by reference the allegations in paragraphs 1 through 62.

64.     The Master Agreement and all associated addendums, including the DCPPA and Order is—and at all times since June 30, 2015, has been—a valid and binding contract between Jenzabar and Case Western.

65.     Jenzabar has materially performed all of its duties and obligations under the contract.

66.     Case Western has breached its obligations under the agreements, including by failing to pay Jenzabar for amounts owed under the contract, and has effectively repudiated the contract.

67.     Jenzabar has suffered, and will continue to suffer, monetary damages and other harms as a result of Case Western's breaches.

## COUNT III
### (Action on Account/Account Stated)

68.     Jenzabar hereby incorporates by reference the allegations in paragraphs 1 through 67.

69.     The Master Agreement and all associated addendums, including the DCPPA and Order is—and at all times since June 30, 2015, has been—a valid and binding contract between Jenzabar and Case Western.

70.    Between 2015 and 2018, Jenzabar and Case Western conducted certain business transactions between them, namely Jenzabar's sale and Case Western's purchase of the Jenzabar Higher Reach software-as-a-service solution and related technical consulting services and expenses under the agreements.

71.    Jenzabar, on numerous occasions, invoiced Case Western for amounts owed to it by Case Western for the services provided (and related expenses) under the agreements.

72.    Case Western did not object that the amounts stated were not owed at the time of invoicing, but rather has since refused to pay certain invoices.

73.    Case Western, as of August 23, 2018, owes Jenzabar a balance of $82,280.75 on its account, plus finance charges at the contractual monthly interest rate set forth in the parties' agreements.

74.    There is now due, owing, and unpaid from Case Western to Jenzabar a balance of $82,280.75, plus finance charges at the contractual monthly interest rate set forth in the parties' agreements.

## PRAYER FOR RELIEF

WHEREFORE, Jenzabar respectfully requests that this Court:

A.    Enter judgment on Count I in Jenzabar's favor, and against Case Western, declaring that:

    (i)    Jenzabar does not have an obligation under the contract to deliver the Accelerated Functions to Case Western, the Accelerated Functions Credits is Case Western's sole and exclusive remedy and Jenzabar's payment of the Accelerated Functions Credits to Case Western satisfies any obligation it has concerning that functionality;

    (ii)    any liability of Jenzabar under the DCPPA is limited to $6,000; and

    (iii)    any liability of Jenzabar under the contract is limited to amount of fees paid by Case Western to Jenzabar for the particular service provided.

B.  Enter judgment on Count II in Jenzabar's favor, and against Case Western, in amount to be determined at trial with costs and interest;

C.  Enter judgment on Count III in Jenzabar's favor, and against Case Western, in amount to be determined at trial with costs and interest;

D.  Grant an award to Jenzabar for its attorneys' fees and costs to the extent allowed for by the parties' contract and applicable law; and

E.  Grant an award of any further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Jenzabar demands a trial by jury on all claims so triable as of right.

JENZABAR, INC.

By its attorneys,

Matthew P. Ritchie (BBO# 670051)
Liam T. O'Connell (BBO# 558249)
Sa'adiyah K. Masoud (BBO# 659078)
Nutter McClennen & Fish LLP
155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone:  (617) 439-2000
Facsimile:  (617) 310-9000
loconnell@nutter.com
mritchie@nutter.com
smasoud@nutter.com

Dated:  August 23, 2018

4016651

14